HENRY PEYCHAUD v. LOUIS PILIE and others, Testamentary Executors of Lucien Guillaume Hiligsberg, deceased.

APPEAL from the Court of Probates of St. Bernard, *Rousseau*, J.

*Denis*, *Pitot*, and *Benjamin*, for the plaintiff.

*Bernard*, *Pilié*, and *Roselius*, for the appellants.

SIMON, J. The defendants, who represent the succession of the late L. G. Hiligsberg, as the testamentary executors of the deceased, are appellants from a judgment which allows to the plaintiff the sum of five thousand dollars, as a just compensation for certain services by him rendered to the deceased, in examining, reviewing, and balancing the commercial books of the late J. B. Canfrancq, and orders the said sum to be paid in due course of administration.

The petition represents that no compensation was agreed on between the deceased and the petitioner ; that the latter undertook the work, which was a most laborious and intricate one, and was occupied at it during a whole year, being obliged to work the greatest part of his nights in order not to delay it ; that he was obliged to employ a clerk to aid and assist him, and to pay his travelling expenses, &c. ; and that the said work, having been terminated, in April, 1843, was transmitted to the deceased, by whom it was received, and with whom the petitioner has never been able to have a settlement, as he, deceased, was so sick that he could not attend to it, though often applied to for that purpose.

This case presents a mere question of fact, the solution of which depends upon the testimony of divers witnesses heard on both sides, and which we have attentively perused, and carefully reviewed in all its bearings upon the rights and pretensions of the parties.

It is admitted by the defendants, in their capacity of executors, that the plaintiff was employed by the deceased to strike the balance of the books belonging to the late J. B. Canfrancq ; which books consisted of *six journals, one ledger, one balance sheet,* and

*ten folios*, all introduced in evidence, the said ten folios being written by the plaintiff.

The first witness introduced by the plaintiff, is J. F. Barthelemy, who was employed by the plaintiff to assist him in making the balance of all the books of Canfrancq. These books begin from the eighth year of the French Republic, and continue up to December 1821. They contain the work which was done by the witness and the plaintiff. It appears from this testimony that the witness labored with the plaintiff for three months and a half, during all the days of the week, from 4 to 9 o'clock P. M., and on Sundays from 9 to A. M. to 3 P. M., for which the witness was employed by the plaintiff at the rate of $40 per month, with a promise that more should be allowed as an *extra* compensation to be paid when plaintiff should receive his own. Plaintiff was a book-keeper in the Citizens Bank, and when he was appointed clerk of the Parish Court of New Orleans, (20th March, 1843,) was still working at those books. He had begun in March or April, 1842, and after having worked at the books for five or six months, having made the balance of all the balances, and all the additions in all the books, and checked all the entries ;from the journal to the ledger, being unable to find out the errors that existed, was about abandoning the work, when, at the witness' suggestions, he began the folios from one to ten, taken from all the journals, and a new ledger, in order to find out all the errors ; and, after having made the new ledger, witness and plaintiff were obliged to check the new ledger with the old one, in order to find out the omissions and errors. In writing out the ten folios, plaintiff was occupied two months and a half, for five or six hours every day, and on Sundays from morning till night ; and before commencing the folios, plaintiff was occupied in making out the balance of all the balances, and checking the items from the journals to the ledger. After the work had been performed, there was still an error undiscovered, which was discovered afterwards by the plaintiff, without deponent's assistance.

A. Baudouin, the next witness, proves that he examined the books of Canfrancq made out by the plaintiff, and that he saw the latter whilst he was attending to this business. The witness

goes on to state divers cases, in which he was employed and remunerated for similar services, and says, that whilst he was cashier of the Consolidated Association, he was employed by the bank itself, with a compensation of $3000 *extra* salary, to cancel notes of the old emission, which, in his opinion, was not one-half of the work in question. He had occasion to see and examine the work done by the plaintiff, and *would estimate the value of said plaintiff's services at* $6000, and he gives the reasons upon which his estimation is based. He further says, that this kind of work requires extraordinary ability, because the man who has no method could not have performed it. He has seen plaintiff at work, and has examined the result of his labors. The work was completed about six months previous to Hilligsberg's death. The witness considers the work done by one man, which requires one year for its performance, as equal to two years, when an assistant is required; and he considers the work done by plaintiff as equal to the work of a book-keeper for two years, with an assistant. Book-keepers in large houses generally receive about $3000 per annum.

Judge Maurian testifies, that he has examined the books; that he is himself conversant with book-keeping, and knows the difficulties encountered by plaintiff in his undertaking. He has seen plaintiff working at the business for more than one year, and often in company with Mr. Barthelemy, who was, part of the time, engaged in assisting him. The witness says, that he had occasion to examine the nature of the work, the details of which are immense, and susceptible of being understood only by persons entirely versed in book-keeping. He gives a detailed statement of the nature and extent of the work, and says, that from the knowledge he has of the whole work, he considers *the charge made by the plaintiff as extremely moderate.* He considers the intrinsic value of the work done to be much more than the price charged, and, with respect to the party who required it, he has no doubt that the value thereof must have been much greater, if he is right in the object which he supposes that person must have had in view. He says further, that out of fifty, perhaps one hundred book-keepers in New Orleans, there are hardly two to be found who could bring such an undertaking to

a successful issue. The deponent further states, that he urged the plaintiff to have a settlement with Hilligsberg before he died, as very few persons would be able to know the extent of the work, and as Hilligsberg, having a proper idea of its magnitude, would compensate him accordingly.

Gustave Tournade, who is a book-keeper, swears that the deceased proposed to him to undertake the work, but that on examining it, he found it so difficult and immense, that he refused to undertake it. He gives certain details of the extent of the work, in which he corroborates the statements made by the witness Barthelemy; and testifies that, from his knowledge as a book-keeper, and of the books labored on by plaintiff, and the work done by the latter, he thinks *the charge made a very moderate one.*

Louis Bernard, who had been cited by the defendants, but who was sworn by plaintiff, after giving divers particulars as to the extent of the work, and the time employed by plaintiff in performing it, says, that *the compensation demanded by said plaintiff is not exaggerated,* and that he, witness, would not have done it for that sum, particularly at that time. His opinion is based, not only upon the length of time employed in doing the work, but also on its difficulty.

Chevalier Jumonville, another witness cited by defendants, but called by plaintiff, testifies, that having heard the testimony just given by Bernard, he corroborates it in all its parts.

Gustave Cruzat states that he has examined the work, and that, from its immensity, and the time and labor necessary to perform it, he thinks *the charge of* $5000 *is not extravagant, but reasonable and moderate.* He is a book-keeper.

Alphonse Miltenberger, the last witness for plaintiff, swears that he has examined the work done by plaintiff, and that he does not think *the charge of* $5000 *to be too much.*

Three witnesses were examined on the part of the defendants, to wit: William Larue, who testifies that he has examined the books as containing the work done by plaintiff; that they embrace a period of twenty years; that he thinks competent book-keepers could have been found to perform it, but that they would have charged good salaries for it. He scarcely thinks a

price can be named for this work, considering the time and labor necessary to perform it, and he would not himself have undertaken it. He made an estimate at the time of the examination of the books; valued the work at first at $1000, and afterwards raised it to $1200, but learned since that there was an error, to correct which it was necessary to make out a new ledger from the journals.

Henry Hoffmeyer says, that he is a book-keeper, and has examined the books, and that, from what he saw, he would not do the work himself for $3000, in order to discover the error. He gives his ideas as to the manner of finding out the errors; deems it impossible to say what would be the precise value of the work, and *would have done it for* $5000. He states, further, that it would take a year, at least, to do the work, and that it would take four weeks for each folio, and ten months for the ten folios.

And George Legendre testifies, that he has examined the books; that, if an incompetent book-keeper had made the additions in the journal and ledger, and had been unable to strike a balance, he would consider the work and labor to be done by another, to find the balance, much more laborious than the first examination. He states his views upon what should have been done; thinks these books would take from eighteen to twenty months to be checked once by one person; and says, that if he had been called upon to strike and find the balance, after it had been tried before, he thinks *he would have demanded the sum of* $4000: he does not pretend to say that it might not have been worth more, but he would not have asked more.

It is also shown, by the testimony of Latour, that the plaintiff, previous to the death of Hilligsberg, came to request Mr. Pilié, who was at one time the agent of the deceased, to effect a settlement with the latter, for the work which plaintiff had done for him. Pilié was unwell at the time, and plaintiff did not see him. Pilié was too unwell to attend to this business, and Hilligsberg died before plaintiff could see Mr. Pilié.

With this evidence before him, we are not prepared to say that the conclusion adopted by the judge *a quo* is erroneous, and that the amount allowed to the plaintiff is excessive. Indeed,

the testimony of all the witnesses who have been heard on the
subject in controversy, who are all very respectable persons,
perfectly competent, and shown to be well versed in the science
of book-keeping, establish positively that the plaintiff is entitled
to a compensation of $5000 ; nay, some of them say that it is
worth $6000, and a majority of the witnesses concur in the
opinion that the charge made by the plaintiff is a very moderate
one. It appears also, from the testimony of Judge Maurian,
who was well acquainted with the nature and extent of the
work, that it was of great importance to the deceased that it
should be well done ; he says that, with respect to the party
who required it, he has no doubt its value must have been
much greater than the price claimed ; and, if we consider that,
the object of the operation being to find out errors which existed
in commercial books containing entries of important commer-
cial transactions during a period of twenty years at least, it
was necessary to check every item, to transcribe them into new
books, to strike the balances of every year, and to bring the
entries and yearly balances to a general and correct balance,
free from all errors, we may well judge of the importance of
the undertaking, and of the time and labor necessary to perform
it. This the plaintiff undertook to perform ; and it is not pre-
tended that his long, laborious, and tedious task was unsuccess-
ful. On the contrary, the evidence shows that Hilligsberg
attained his object, and that the work was well and satisfacto-
rily done. In 13 La. 413, in the case of *Howe* v. *Manning's
Executor*, to which we have been referred, it is true, this court
held, that *the reasons which induce an inferior judge to disregard
the testimony of witnesses, as well as the fact itself that he did dis-
regard it, have great weight with us, and that he can give judg-
ment, if he believes the witnesses are not telling the truth, as if no
evidence had been adduced;* but in a case like this, where the
evidence is so concordant upon the facts sought to be estab-
lished ; where the witnesses, all respectable and competent,
agree upon the fairness and legitimacy of the plaintiff's de-
mand; and where the testimony is corroborated by the defend-
ants' witnesses, who, with the exception of one, go almost to
the same extent as to the compensation in controversy, how

could we disregard it with any sense of justice or propriety? The case cited has no application to this. The testimony in this case was not disregarded below, and, we think, the judgment appealed from ought not to be disturbed.

*Judgment affirmed.*